UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20948-CIV-UNGARO

GABY KAFIE.,

    Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**MEMORANDUM OPINION**

THIS CAUSE is before the Court upon the Pretrial Conference held on February 12, 2010, Defendant's Memorandum Regarding Issues Raised in the Pretrial Stipulation, filed February 11, 2010 (D.E. 28), Plaintiff's Response to Defendant's Memorandum Regarding Issues Raised in the Pre-Trial Stipulation, filed February 24, 2010 (D.E. 37), and Defendant's Reply in Further Support of Its Memorandum Regarding Issues Raised in the Pre-Trial Stipulation, filed March 8, 2010 (D.E. 40).

THE COURT has considered the Memoranda and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this suit arises from Defendant Northwestern Mutual Life Insurance Company's ("Northwestern") decision to terminate disability income benefits paid under an insurance policy issued to Plaintiff Gaby Kafie ("Kafie"). Kafie filed suit alleging that Northwestern breached the insurance policy contract by improperly denying him benefits (Count I) and that Northwestern wrongfully canceled or rescinded the waiver of the premium benefit as provided in the insurance policy (Count II). In response, Northwestern filed two counterclaims against Kafie, alleging that he misrepresented his disability (Counterclaim I) and seeking reimbursement of the benefits paid to Kafie (Counterclaim II). The case is set for a bench trial.

On the eve of the parties' Pretrial Conference, Northwestern filed its Memorandum indicating that there are three legal issues requiring the Court's determination prior to trial. The first issue is whether Kafie has the burden of establishing disability under the insurance policy in

order to succeed on his claims. The second issue is what is the definition of "total disability." And finally, the third issue is whether evidence that Kafie was investigated for Medicaid fraud is admissible in trial. The Court will reserve ruling on the third issue, but will consider the first and second issues in turn.

## **Burden of Proof**

It is undisputed that Northwestern paid Kafie disability benefits for a short period of time before it decided to terminate his benefits. (Joint Pretrial Stipulation, ¶ 5(i)-(k).) Northwestern acknowledges that Florida's Third District Court of Appeal in *Fruchter v. Aetna Life Insurance Company,* 266 So. 2d 61 (Fla. 3d DCA 1972), *writ discharged,* 283 So. 2d 36 (Fla. 1973), held that when an insurer first pays and later terminates disability benefits, it is the insurer who then carries the burden of proving by a greater weight of evidence that the insured's disability has ceased. Yet, Northwestern argues that *Fruchter's* burden-shifting rule is inapplicable as a matter of fact and law, and, therefore, Kafie carries the burden of proving disability.

Northwestern argues that in order for a court to shift the burden from the insured to the insurer, the relevant insurance policy must contain language that provides a "presumption of permanent disability."[1] Candidly, Northwestern admits that there was no such contract provision mentioned in *Fruchter*; instead, Northwestern looks to the cases cited in *Fruchter* to conclude that such contract language is necessary. The Court has reviewed the cases upon which Northwestern relies,[2] but finds them unpersuasive because they do not stand for the proposition that "presumption of permanent disability" provisions are *necessary prerequisites* for burden shifting. Indeed, in the most recent of these cases, *Mutual Life Ins. Co. of New York v. Ewing*, 10 So. 2d 316 (Fla. 1942), the Florida Supreme Court does not even mention the word

---

[1] For example, a contractual provision that provides that a presumption of permanence attaches to a proven total disability after it has continuously existed for a certain period of time. (*See* Northwestern's Memorandum at 3.)

[2] Specifically, the Court has considered the following cases: *Equitable Life Assurance Society of the United States v. McKeithan*, 160 So. 883 (Fla. 1953); *New York Life Ins. Co. v. Leeks*, 165 So. 50 (Fla. 1935); and *Mutual Life Ins. Co. of New York v. Ewing*, 10 So. 2d 316 (Fla. 1942).

"presumption" when elucidating the applicable rule as to the burden of proof.

      Furthermore, the Court notes that when discharging the writ of certiorari in *Fruchter,* the Florida Supreme Court explained in *dicta* that insurance policy provisions do not change the underlying principle that once an insurer has acknowledged a disability by proceeding to make disability payments it carries the burden of proving the non-existence of a disability. *Aetna Life Ins. Co. v. Fruchter*, 283 So. 2d 36, 37 (Fla. 1973); *see Shaps v. Provident Life & Accident Ins. Co.,* 826 So. 2d 250 (Fla. 2002) (stating that the denial of certiorari in *Fructher*, 283 So. 2d 26, is not to be construed as an opinion on the merits and any discussion of the merits is *dicta*).  Since then, the Third District Court has restated the *Fruchter* burden-shifting rule without any mention of a necessary contractual presumption provision in the policy. *Principal Mut. Life Ins. Co. v. Martin*, 585 So. 2d 474, 475 (Fla. 3d DCA 1991).  And the Eleventh Circuit more recently acknowledged the *Fruchter* burden-shifting rule without any mention of the contractual presumption rule that Northwestern posits is necessary. *See Shaps v. Provident Life & Accidental Ins. Co.*, 317 F.3d 1326, 1331 (11th Cir. 2003).  Finally, the Court notes that Northwestern cites no post-*Fruchter* authority in support of its position that such contract language is necessary.

      In conclusion, the Court rejects Northwestern's argument that a presumption of permanence provision must exist in a policy in order to shift the burden of proof in a case where disability benefits have been paid under that policy but discontinued.  Because it is undisputed that Northwestern began paying Kafie disability benefits and thereafter terminated such benefits, it will be Northwestern's burden to show at trial by the "preponderance of the evidence that the condition of the insured is such that he no longer comes within the purview of the policy." *Ewing*, 10 So. 2d at 664.

### "Total Disability"

      It is undisputed that the insurance policy defines "total disability" as being "unable to perform the material and substantial duties of the regular occupation." (Joint Pretrial Stipulation, ¶ 5(b).)  Yet, Kafie argues that there is a substantial controversy as to what "total disability"

means.  Kafie argues that "Florida law requires a supplement to the policy's definition of total disability beyond the 'material and substantial duties' aspect because the insured must be able to perform those duties *in a customary and usual manner*."  (Response at 4 (emphasis in original).)[3] For support, Kafie cites *Groff v. Paul Revere Life Insurance Company*, 887 F.Supp. 1519, 1520 (S.D. Fla. 1994),[4] where the district court explained to the jury that total disability "does not mean absolute helplessness, but contemplates a disability to perform all the substantial and material acts necessary to his regular occupation *in a customary and usual manner*."  The district court held that the italicized language was not an incorrect interpretation of the insurance policy's definition "total disability," which simply read: "[T]he complete inability of the Employee . . . to perform any and every duty pertaining to his occupation."  887 F.Supp at 1520.

Importantly, however, the definition of total disability in this case is dissimilar from the one at issue in *Groff*.  Here, the definition is more specific because it states that total disability is the "inability to perform *the material and substantial* duties of the regular occupation."  (Policy, ¶ 1.4 (emphasis added).)  In this way, it is more akin to the total disability definition at issue in *Ames v. Provident Life & Accidental Insurance Co.*, 942 F.Supp. 551, 556 (S.D. Fla. 1994),[5] where the policy provided that "total disability" is when the insured is "not able to perform the substantial and material duties of [his] occupation."  In *Ames*, the district court declined to charge the jury with any "extraneous and potentially descriptions or definitions derived from case law." *Id.*  Rather, the district court noted that "there is no general rule entitling litigants in lawsuits over disability policies to such instructions as a matter of course," and that Florida courts have

---

[3] Initially, it appears that the controversy between the parties was whether the total disability definition meant that Kafie had to be totally disabled by an "inability to perform one or more of the material and substantial duties of his occupation."  (*See* Motion at 6-7.)  However, Kafie apologizes in his Response, stating that this is not the real controversy (counsel had been working of a different policy when it articulated this position), *but* there is *another* controversy—whether with the "customary and unusual manner" language must be added to the total disability definition.  (Reponse 3-4.)

[4] Affirmed in a table decision, 85 F.3d 642 (11th Cir. 1996).

[5] Affirmed in a table decision, 86 F.3d 1168 (11th Cir. 1996).

criticized the use of dicta from appellate decisions in jury instructions. *Id.* at 557.

The Court finds that the insurance policy's definition of "total disability" clear, and it declines any invitation to "supplement" the definition based on non-binding, factually-distinguishable case law. Accordingly, the Court finds that the appropriate definition fo "total disability" is the one agreed to by the parties and the one provided for in the insurance policy contract itself.

DONE AND ORDERED in Chambers, Miami, Florida, this 11th day of March, 2010.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record